UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STEPHANIE UMSTEAD, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 24-1007 (RBW) |
| UBER TECHNOLOGIES, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Stephanie Umstead, Michael Fontaine, and Louis Nicoletti (collectively the "plaintiffs") bring this civil action against the defendants—Uber Technologies, Inc. ("Uber"); Raiser, LLC; Raiser-DC, LLC; and Cherinet Habtegioris[1]—alleging negligence and negligence per se in relation to an automobile collision ("Count I"), see Complaint for Damages ("Compl.") at 8–9, ECF No. 2; and "negligent hiring/training/supervision[,]" ("Count II"), id. at 9–10. Currently pending before the Court is defendants Uber Technologies, Inc., and Raiser LLC's (the "Uber Defendants") motion to compel arbitration and dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  See generally Defendants Uber Technologies, Inc. and Raiser LLC's Motion to Compel Arbitration and to Dismiss ("Defs.' Mot."), ECF No. 14.  Upon careful

---

[1] In their Complaint, the plaintiffs refer to Uber Technologies, Inc., Raiser, LLC, and Raiser-DC, LLC, collectively as "the Uber Defendants[,]" Compl. ¶ 10, and they refer to Cherinet Habtegioris as "the Uber Driver Defendant[,]" id. ¶ 11.  The Court will therefore adopt these titles.  The plaintiffs represent that, at the time of the collision at issue in this case, "the Uber Driver Defendant was an employee, agent, and/or servant of the Uber Defendants, and was acting within the course and scope of his employment[,]" id. ¶ 12, and "[t]he Uber Defendants are vicariously liable for the tortious acts and/or omissions committed by the Uber Driver Defendant, which directly and proximately caused serious and permanent injuries to [the p]laintiffs[,]" id. ¶ 13.

[2] The Court notes that Raiser-DC, LLC, is not named in the title of the Uber Defendants' motion to compel arbitration and dismiss, see Defs.' Mot. at 1, but it is nonetheless named in the title of the Uber Defendants' memorandum in support of their motion to compel arbitration and dismiss, see Defs.' Mem. at 1.  Accordingly, the Court will refer to both filings as having been filed by the Uber Defendants.

consideration of the parties' submissions,[3] the Court concludes for the following reasons that it must grant the Uber Defendants' motion to compel arbitration as to plaintiffs Umstead and Fontaine; deny the Uber Defendants' motion to compel arbitration as to plaintiff Nicoletti; deny the Uber Defendants' motion to dismiss; and stay the proceedings as to plaintiffs Umstead and Fontaine against all defendants[4] pending the outcome of arbitration.

## I.  BACKGROUND

### A.  Factual Background

Uber "develops proprietary technology to develop and maintain digital multi-sided platforms." Defs.' Mem. at 2. Uber's "Rides" platform connects "individuals in need of a ride" with "individuals willing to provide transportation services." Id. "In order to utilize Uber's [Rides] platform[], a user must register for an account and agree to the Terms of Use." Pare Aff. ¶ 6. According to an affidavit submitted by the Uber Defendants, plaintiffs Umstead and Fontaine each had an Uber Rides account. Id. ¶¶ 12, 18. In December 2021, Uber updated its Terms of Use and both plaintiffs Umstead and Fontaine were presented with "an in-app blocking pop-up screen with the header 'We've updated our terms.'" Id. ¶¶ 8, 14. That pop-up displayed a message in large type which read, "[w]e encourage you to read our Updated Terms in full" and had hyperlinks in bright blue text to the "Terms of Use" and a "Privacy Notice." Defs.' Mem. at 3–4; Pare Aff., Ex. A (In-app Pop-Up Screen), ECF No. 14-3. The pop-up screen required users

---

[3] In addition to the filings already identified, the Court also considered the following submissions in rendering its decision: (1) the Defendants' Notice of Removal ("Defs.' Notice"), ECF No. 1; (2) Defendants Uber Technologies, Inc., Raiser LLC, and Raiser-DC, LLC's, Memorandum in Support of their Motion to Compel Arbitration and Dismiss ("Defs.' Mem."), ECF No. 14-1; (3) Defs.' Mot., Exhibit ("Ex.") 2 (Affidavit of Jacqueline Pare ("Pare Aff.")), ECF No. 14-2; (3) the Plaintiffs' Memorandum in Opposition to Uber Technologies, Inc. and Raiser, LLC's Motion to Compel Arbitration and to Dismiss ("Pls.' Opp'n"), ECF No. 16; and (4) Defendants Uber Technologies, Inc. and Raiser LLC's Reply in Support of their Motion to Compel Arbitration and to Dismiss ("Defs.' Reply"), ECF No. 17.

[4] The Uber driver Defendant filed an Answer to the Complaint on April 26, 2024, ECF No. 9, but in this Memorandum Opinion the Court only addresses claims against the Uber defendants.

2

to click a "checkbox" confirming that they "[had] reviewed and agreed to the Terms of Use and acknowledge[d] the Privacy Notice." Pare Aff., Ex. A (In-app Pop-Up Screen). Plaintiff Fontaine clicked the checkbox on December 21, 2021, id. ¶ 18, and plaintiff Umstead clicked the checkbox on December 22, 2021, id. ¶ 23. The Terms of Use included an arbitration agreement (the "Arbitration Agreement"), which stated:

> [Y]ou and Uber agree that any dispute, claim or controversy in any way arising out of or relating to (i) these Terms and prior versions of the Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof, (ii) your access to or use of the Services at any time, (iii) incidents or accidents resulting in personal injury that you alleged occurred in connection with your use of the Services . . . , whether the dispute, claim or controversy occurred or accrued before or after the date you agreed to the Terms, or (iv) your relationship with Uber, will be settled by binding arbitration between you and Uber, and not in a court of law. This Agreement survives after your relationship with Uber ends.

Id., Ex. C (Uber U.S. Terms of Use Last Modified on Dec. 16, 2021 ("Dec. 2021 Terms of Use")) at 3–4, ECF No. 14-5 (emphasis added).

The December 2021 Terms of Use also included a Delegation Clause, which provided:

> Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel.

Id. at 6. It is undisputed that Plaintiff Nicoletti does not have an Uber Rider account and never agreed to the Terms of Use. See Pls.' Opp'n at 3, 9–11; Defs.' Mem. at 7.

On December 10, 2022, the plaintiffs decided to use Uber ride services in Washington, D.C. Compl. ¶¶ 14–15. Plaintiff Umstead requested a ride through her Uber App at 11:54 p.m., and at 12:02 a.m., a white 2022 Toyota Highlander driven by the Uber driver defendant arrived

3

to pick up the three plaintiffs. Id. ¶¶ 16–17; Defs.' Mot., Ex.) F ("Umstead Trip History") at 25, ECF No. 14-8. All three plaintiffs took seats in the backseat as the Uber driver defendant proceeded to drive them to their requested destination. Compl. ¶¶ 17–18. At around 12:30 a.m., the Uber driver defendant approached an intersection in Southwest Washington, D.C. and allegedly "began driving his vehicle recklessly and carelessly and at an extremely excessive rate of speed." Id. ¶¶ 19–20. The Uber driver defendant then allegedly, "without any consideration for the safety of the [p]laintiffs, . . . recklessly sped through [an] intersection which caused him to lose control of his vehicle" and crash into a concrete fountain. Id. ¶ 21.

The vehicle "instantaneously bounce[d] backwards and land[ed] approximately four [ ] feet" from the fountain. Id. ¶ 22. After the vehicle came to a stop, plaintiffs Nicoletti and Fontaine crawled out of the vehicle allegedly "in severe pain and with serious injuries." Id. ¶ 23. Plaintiff Umstead purportedly "was rendered unconscious and remained in the backseat." Id. ¶ 24. It is not clear from the Complaint when plaintiff Umstead contends she regained consciousness, but all three plaintiffs were transported by ambulance to a local hospital for immediate treatment of the injuries they allegedly sustained as a result of the crash. Id. ¶¶ 28–35. The Uber driver defendant's vehicle was purportedly destroyed, id. ¶ 27, but he "did not show signs of injury" and left the scene with a friend "after [allegedly] admitting fault for the high-speed crash to the responding police officers[,]" id. ¶ 29.

### B. Procedural Background

On March 16, 2024, the plaintiffs initiated this civil action in the Superior Court of the District of Columbia. See Compl. at 1. On April 9, 2024, the defendants timely removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. See Defs.' Notice at 2. And, on April 10, 2024, the Uber Defendants sent the plaintiffs a letter requesting that the plaintiffs

4

"stipulate to arbitration." Defs.' Mem. at 8–9.[5] Thereafter, the parties unsuccessfully attempted mediation. Id. at 9. Then, on February 12, 2025, the Uber Defendants filed the instant motion to compel arbitration and dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) and their supporting memorandum arguing, inter alia, that the plaintiffs' claims are subject to an enforceable arbitration agreement which prevents the Court from adjudicating this case. Defs.' Mem. at 1. The plaintiffs filed their opposition to the Uber Defendants' motion to compel arbitration and dismiss on March 28, 2025. See Pls.' Opp'n at 1. And, on April 4, 2025, the Uber Defendants filed their reply in support of their motion to dismiss. See Defs.' Reply at 1.

## II.   STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides that a contractual provision requiring arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . ." 9 U.S.C. § 2. "[T]he central purpose of the [FAA is] to ensure 'that private agreements to arbitrate are enforced according to their terms.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53–54 (1995) (quoting Volt Info. Scis., Inc., v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)).

A motion to compel arbitration is treated as a "request for summary disposition on the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate" and analyzed under the summary judgment standard of Federal Rule of Civil Procedure 56(c). Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 531 F.3d 863, 865 (D.C. Cir. 2008) (internal quotation marks and citation omitted). "Although a motion to compel arbitration is similar to a motion for summary judgment in framing the burden of proof, the two motions are of course not identical." Jin v. Parsons Corp., 966 F.3d 821, 827 (D.C. Cir. 2020). When analyzing a motion

---

[5] As indicated above in footnote 4, the Uber driver defendant filed an Answer but has not otherwise participated in this action.

to compel arbitration, a court must first determine whether a valid arbitration agreement exists. See Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 69 (2019). "Because the party seeking to enforce an arbitration agreement bears the burden of proving that the other party agreed to arbitrate, the party seeking to compel arbitration must first present evidence sufficient to demonstrate an enforceable agreement to arbitrate." Osvatics v. Lyft, Inc., 535 F. Supp 3d 1, 9 (D.D.C. 2021) (internal citations and quotations omitted). Once the moving party has presented such evidence, "[t]he burden then shifts to the non-moving party to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Rule 56." Id. (internal citations and quotations omitted). "Thus, it is appropriate to grant a party's motion to compel arbitration when the pleadings and the evidence demonstrate that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Booker v. Robert Half Int'l, Inc., 315 F. Supp. 2d 94, 99 (D.D.C. 2004) (quoting Fed. R. Civ. P. 56(c)).

### III.   ANALYSIS

The Uber Defendants seek to compel all three plaintiffs to participate in arbitration pursuant to the FAA and the Arbitration Agreement. See Defs.' Mem. at 9–15. Plaintiffs Umstead and Fontaine argue in response that (1) "[t]he FAA does not apply to [their] claims so the [C]ourt cannot compel arbitration [as to them]," Pls.' Opp'n at 12; (2) "[u]nder D.C. contract law, Uber's terms are unenforceable," id. at 15; (3) "Uber has not met its burden showing mutual assent between [the p]laintiffs and Uber as to the December terms of use," id. at 17; and (4) "the [C]ourt should not stay, much less dismiss, claims against [the Uber driver defendant] and any other claims that are not subject to arbitration," id. at 21. Plaintiff Nicoletti argues that his claims are not subject to arbitration because he did not agree to arbitrate his claims and he is not

6

a third-party beneficiary of the agreements between plaintiffs Umstead, Fontaine, and Uber.  See id. at 9–11.  The Court will first determine whether there is an agreement to arbitrate before addressing the enforceability of that agreement and whether it is controlled by the FAA.

A.      **Whether Plaintiffs Umstead and Fontaine Formed an Agreement to Arbitrate**

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).  State contract law controls this initial determination, see Selden v. Airbnb, Inc., 4 F.4th 148, 156 (D.C. Cir. 2001), and the parties agree that D.C. law applies, see Defs.' Mem. at 10; Pls.' Opp'n at 7.  Under D.C. law, "[a] contract is formed when there is an offer, an acceptance, and valuable consideration. . ."  Dixon v. Midland Mrtg. Co., 719 F. Supp. 2d 53, 57 (D.D.C. 2010) (citation omitted); see also Eastbanc, Inc. v. Georgetown Park Ass'ns II, L.P., 940 A.2d 996, 1004 (D.C. 2008) (finding a contract was formed when "the parties expressed an intent to be bound, agreed to all material terms, and assumed mutual obligations sufficient to create an enforceable contract").

Here, the Court concludes that the Uber Defendants have met their initial burden of establishing that they formed a contract with plaintiffs Umstead and Fontaine with respect to the arbitration provision, as courts have routinely concluded that Uber's terms of service and other similar types of online agreements "establish a clear and unmistakable agreement to arbitrate."  Walker v. Uber Techs., Inc., 749 F. Supp. 3d 134, 145 (D.D.C. 2024) (internal quotations omitted) (first citing Selden, 4 F. 4th at 156–57; then citing Gambo v. Lyft, Inc., 642 F. Supp. 3d 46, 49–50 (D.D.C. 2022)); see Christian v. Uber Techs., Inc., 775 F. Supp. 3d 272, 278–79 (D.D.C. 2025) ("Following in the footsteps of many other courts in this Circuit, the Court agrees that Uber's pop-up screen provided a reasonable person with notice that he was entering into a

contract."); Hilbert v. Uber Techs., Inc., 24-cv-584 (AHA), 2025 WL 42725, at *3 (D.D.C. Jan. 7, 2025) (finding same).

The Court also concludes that plaintiffs Umstead and Fontaine have not satisfied their burden of showing a genuine dispute of material facts as to the formation of the arbitration agreement. They do not contest that they checked the box indicating their review of and agreement to the terms of use. See Pls.' Opp'n at 19–20. Rather, they argue the pop-up notice "should have been more effective in communicating to them, the users, the scope of the contract's terms and conditions" and that "a user who has previously used the Uber app . . . would have been left scratching their head upon opening the app and being presented with this pop-up notice." Id. The Court disagrees. Plaintiffs Umstead and Fontaine affirmatively checked a box confirming that they "[had] reviewed and agreed to the Terms of Use and acknowledge[d] the Privacy Notice." Pare Aff. ¶¶ 12, 18. Under D.C. law, "[a]bsent fraud or mistake, one who signs a contract is bound by a contract which he has an opportunity to read whether he does so or not." Forrest v. Verizon Commc'ns, Inc., 805 A.2d 1007, 1010 (D.C. 2002). Because plaintiffs Umstead and Fontaine were at least on inquiry notice of the Terms of Use, which is satisfied where, as here, "the terms [are] presented to the user in a clear and conspicuous manner," Walker, 749 F. Supp. 3d at 148 (D.D.C. 2024), they have failed to establish any genuine issue of material fact as to the formation of the Arbitration Agreement. Accordingly, the Court concludes that a contract was formed between plaintiff Umstead and Uber and between plaintiff Fontaine and Uber when these plaintiffs checked the box and clicked confirm.[6]

---

[6] The Uber Defendants contend in their motion to compel arbitration that "[Plaintiff] Fontaine may not avoid his obligations under the Terms and Conditions merely because he was not the individual that submitted the ride request." Defs.' Mem at 7. They based their position on the fact that "[p]laintiff Fontaine contracted with Uber and
(continued . . .)

8

B.      **Whether Plaintiff Nicoletti Formed an Agreement to Arbitrate**

The Court now turns to the question of whether plaintiff Nicoletti formed an agreement to arbitrate with Uber.  Plaintiff Nicoletti, unlike plaintiffs Umstead and Fontaine, never "browsed, clicked, scrolled, signed in, signed up, or otherwise interacted with Uber's website, app, or terms of use in any way."  Pls.' Opp'n at 9.  The Uber Defendants do not dispute that plaintiff Nicoletti never created an Uber account and he therefore was never asked to review the terms of use and, consequently, never agreed to them.  See generally Defs.' Mem; Defs.' Reply.  The Uber Defendants nonetheless contend that plaintiff Nicoletti was a "third-party beneficiary" who "actively availed himself of the services alongside the account holders [and t]hus 'he clearly stood to benefit from the agreement at issue.'"  Defs.' Mem. at 15 (citing Sakyi v. Estee Lauder Cos., Inc., 308 F. Supp. 3d 366, 384 (D.D.C. 2018)).  Essentially, the Uber Defendants' argument is that plaintiff Nicoletti is bound by Uber's terms of use because he voluntarily rode in an Uber ordered by one of his friends.  See id.  Plaintiff Nicoletti responds first by arguing that he is not bound by Uber's terms of use because he never formed a contract with Uber.  Pls.' Opp'n at 9.  Plaintiff Nicoletti then argues that he was not a third-party beneficiary of plaintiffs Umstead's and Fontaine's contracts with Uber because "a plain reading of the contract here shows that it does not contemplate a benefit to any third party [because] [it] is an agreement between Uber and the user."  Id. at 10.

The Court's first step, again, is to determine under D.C. law whether a valid arbitration agreement exists between plaintiff Nicoletti and Uber.  See Mitsubishi Motors Corp., 473 U.S. at

---

(. . . continued)
is bound by the Terms and Conditions [because] he was availing himself of the services contemplated in the agreement at the time of [his] injuries."  Id.  Plaintiff Fontaine does not argue otherwise, so the Court need not further address whether the fact that Plaintiff Fontaine did not himself submit the ride request bears on whether he is bound by the arbitration agreement.

9

626. For the following reasons, the Court concludes that plaintiff Nicoletti, unlike plaintiffs Umstead and Fontaine, has met his burden of "rais[ing] a genuine issue of material fact as to the making of the agreement." Osvatics, 535 F. Supp. 3d at 9.

The making of an agreement under D.C. law requires "mutual assent by the parties to the terms thereof." Walker, 749 F. Supp. 3d at 146 (internal citations and quotations omitted). Mutual assent, "often referred to as a 'meeting of the minds,'" does not require a party's signature on an agreement or, as here, a party's click on a checkbox. Id. (quoting Davis v. Winfield, 664 A.2d 836, 838 (D.C. 1995)); see also Porter v. General Boiler Casing Co., 396 A.2d 1090, 1095 (D.C. 1979) ("The purpose of a signature is simply to demonstrate mutual assent to a contract, but that may be shown instead, or in addition, by the conduct of the parties."). Mutual assent does, however, require both parties to "have the distinct intention to be bound; without such intent, there can be no assent and therefore no contract." Edmund J. Flynn Co. v. LaVay, 431 A.2d 543, 547 (D.C. 1981).

The Court agrees with plaintiff Nicoletti that he did not have the distinct intention to be bound by the terms of use. See Pls.' Opp'n at 9. The defendants do not dispute the plaintiffs' representation that "[t]here is no evidence that [Nicoletti] browsed, clicked, scrolled, signed in, signed up, or otherwise interacted with Uber's website, app, or terms of use in any way." Pls.' Opp'n at 9. Moreover, Uber "did not condition [Nicoletti's] use of the rideshare service on [Nicoletti's] acceptance of the [terms of use] through some affirmative act." Walker, 749 F. Supp. 3d at 147. The Court, therefore, cannot conclude that merely accompanying his two friends, one of whom had secured the services of the Uber driver defendant, resulted in plaintiff Nicoletti entering into a contract with Uber. See id.

10

While it is true that "[a] nonsignatory to an arbitration agreement may be bound by that agreement under traditional principles of contract and agency law," Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs., Ltd., 902 F. Supp. 2d 87, 97 (D.D.C. 2012), none of those principles, including the third-party beneficiary doctrine, are implicated here.  The Terms of Use provide that the Arbitration Agreement "shall be binding upon, and shall include any claims brought by or against any third parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, when their underlying claims arise out of or relate to your use of the Services."  Defs.' Mem. at 8 (emphasis omitted); Pare Aff., Ex. C (Dec. 2021 Terms of Use) at ¶ 2(a)(5).  But the Uber Defendants have failed to show that plaintiff Nicoletti is a third-party beneficiary.

"Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party urged to be a third-party beneficiary."  Oehme, van Sweden & Assocs., Inc., 902 F. Supp. 2d at 100.  In determining whether a party is a third-party beneficiary, "[c]ourts will read the contract as a whole to determine whether the third party's benefit . . . is intended or incidental . . . and will consider factors including whether the nonparty clearly stood to benefit from the agreement at issue and whether the nonparty's involvement [was] plainly ascertainable from the four corners of the contract."  Sakyi, 308 F. Supp. 3d at 384 (internal quotations and citations omitted).

Here, there is no evidence to suggest that plaintiff Nicoletti stood to benefit from the arbitration agreement or that his involvement is "plainly ascertainable from the four corners of the contract."  See id.; see also Walker, 749. F. Supp. 3d at 150 (concluding that the same contract at issue here, when considered "'as a whole[,]' does not contemplate a benefit to any party other than [the account holder] and Uber.").  The contract at issue is between Uber and the

11

user, here plaintiffs Umstead and Fontaine. Although the Arbitration Agreement purports to bind third-party beneficiaries, "Uber cannot through the backdoor of an arbitration clause turn [Nicoletti] into a third-party beneficiary to the Terms that only [Umstead and Fontaine] agreed to." Walker, 749 F. Supp. 3d at 150. Thus, the Uber Defendants' argument that plaintiff Nicoletti is bound by the Arbitration Agreement as a third-party beneficiary because he used Uber's services under the circumstances of this case is unavailing. Defs.' Reply at 12.

Even if plaintiff Nicoletti could be considered a third-party beneficiary, as he correctly points out, D.C. law does not authorize the contract's signatories to enforce an arbitration agreement against a third-party beneficiary. See id. at 150 ("Uber cites no authority for the proposition that District of Columbia law permits a party to a contract to enforce an arbitration agreement against a third-party beneficiary. In fact, courts in this District have read D.C. law to hold the opposite."). Accordingly, the Court finds that no contract was formed between plaintiff Nicoletti and Uber and, therefore, his claims are not subject to arbitration.

C. **Whether the FAA Applies to Plaintiffs Umstead's and Fontaines' Arbitration Agreements**

Having found that plaintiffs Umstead and Fontaine are compelled to comply with arbitration agreements they created with the Uber Defendants, the Court now addresses these plaintiffs' argument that the FAA is not applicable because their claims "fall outside the scope of the FAA." Pls.' Opp'n at 3; see Watson v. Gold N Diamonds, Inc., 736 F. Supp. 2d 266, 269 (D.D.C. 2010) ("When a party seeks arbitration, a court must first determine whether there is a valid agreement to arbitrate. Then, the court must determine whether the specific dispute falls within the scope of the arbitration agreement.") (internal citations omitted). Plaintiffs Umstead and Fontaine argue that the FAA does not apply because (1) their dispute with the Uber Defendants does not "aris[e] from the underlying contract," Pls.' Opp'n at 12, (2) the Arbitration

12

Agreement is unenforceable because it is an "infinite arbitration clause," id. at 13, and (3) the Arbitration Agreement's Delegation Clause "is unenforceable as being unashamedly against public policy," id. at 15.  Uber responds that the plaintiffs' arguments misconstrue the issue of scope with the issue of validity and the "policy in favor of arbitration that attaches once there is a finding of a valid arbitration agreement . . . 'applies to the resolution of scope questions.'" Defs.' Reply at 5 (quoting Kristian v. Comcast Corp., 446 F.3d 25, 35 (1st Cir. 2006)).

Plaintiffs Umstead and Fontaine contend that the FAA "does not extend to claims like [theirs] that do not have the required nexus with the underlying contract—Uber's December Terms of Use."  Pls.' Opp'n at 12.  Plaintiffs Umstead and Fontaine rely on out-of-circuit cases for their position that "when the dispute is entirely unrelated to the contract containing the arbitration clause, the clause is outside the scope defined by § 2 [of the FAA] and courts lack the authority to compel arbitration."  Pls.' Opp'n at 13.  Their argument, however, overlooks the existence of the Arbitration Agreement's Delegation Clause.

A court "has no power to determine whether a claim is arbitrable, or 'arises out of' the underlying contract, where, as here, there is a delegation clause."[7]  Christian, 775 F. Supp. 3d at 281.  However, a delegation clause is severable from the remainder of the arbitration agreement. See Coinbase, Inc. v. Suski, 602 U.S. 143, 144 (2010).  Therefore, when a party specifically challenges a delegation clause, the enforceability of the delegation clause becomes an "antecedent" question for the court's consideration.  Walker, 749 F. Supp. at 146 (quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 72 (2010).  Here, the plaintiffs specifically challenge the enforceability of the delegation clause.  See Pls.' Opp'n at 15 (arguing that "the delegation

---

[7] Even if this was that not the case, the Court fails to see how a "dispute . . . against Uber, for a car accident that occurred during an Uber trip [is not] exactly the type of lawsuit that a reasonable Rider would expect to have to arbitrate after accepting the Terms of Use."  Id.

13

clause in the December Terms of Use is unenforceable as being unashamedly against public policy"). The Court must therefore determine whether the Delegation Clause contained in the Terms of Use is enforceable.

### D. Whether the Delegation Clause Is Enforceable

"[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." Henry Schein, 586 U.S. at 69 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Here, the Delegation Clause provides in pertinent part that "[a]n arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether the [t]erms are applicable." Pare Aff., Ex. C (Dec. 2021 Terms of Use) ¶ 2(a)(4). The Delegation Clause, in addition to the provision designating that an arbitrator has exclusive authority to resolve threshold arbitrability questions, provides that:

> Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable.

Pare Aff., Ex. C (Dec. 2021 Terms of Use) ¶ 2(a)(4). Without explaining why or how, the plaintiffs maintain that the Delegation Clause is "unashamedly against public policy." Pls.' Opp'n at 15. But this Delegation Clause is both "clear" and "unmistakable," see Henry Schein, 586 U.S. at 69, and the plaintiffs offer no reasons why it is not enforceable. Without more explanation for their position, the plaintiffs have therefore not met their burden of establishing a genuine dispute of a material fact as to the enforceability of the Delegation Clause. See Christian, 775 F. Supp. 3d at 282–83 ("Plaintiffs offer no evidence, nor arguments even, that the Delegation Clause itself is 'unreasonably favorable to the other party' or that they had no

14

'meaningful choice' when entering into the agreement to delegate." (citing Doucette v. Neutron Holdings Inc., 288 A.3d 339, 342 (D.C. 2023)).  Accordingly, the Court finds that the Delegation Clause is enforceable and, because the plaintiffs and the Uber Defendants agreed to delegate threshold questions of arbitrability to an arbitrator, the Court finds that arbitration of both plaintiffs Umstead's and Fontaine's claims is required.

E.       **Whether the Court Should Dismiss the Plaintiffs' Claims or Stay Proceedings**

The Uber Defendants initially requested that the claims against them "be dismissed and the remaining proceedings before this Court as to the Co-Defendants stayed until the conclusion of arbitration."  Defs.' Mem. at 26.  In response, the plaintiffs propose that if "the Court determines that the choice is between dismissing [the p]laintiff[s'] claims against the Uber Defendants or staying the case, [the p]laintiffs request that the [C]ourt should choose the latter." Pls. Opp'n at 21–22.  In their Reply, the Uber Defendants maintain that "all claims against them should be dismissed with prejudice [, but] to the extent any claims remain and the case remains pending against the Co-Defendants in this matter, the case should be stayed."  Defs.' Reply at 14–15.

"When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." Smith v. Spizzirri, 601 U.S. 472, 478 (2024).  Accordingly, the Court will stay these proceedings as to plaintiffs Umstead's and Fontaine's claims against the Uber defendants. The Court has "broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere," IBT/HERE Emp. Representatives' Council v. Gate Gourmet Div. Americas, 402 F. Supp. 2d 289, 292 (D.D.C. 2005), and because plaintiffs Umstead's and Fontaine's claims against the Uber defendants and the Uber driver defendant involve common

15

questions of fact and law, the Court will use that broad discretion to also stay the proceedings against the Uber driver defendant.  See Christian, 775 F. Supp. 3d at 283 n.11; see also Moore v. Interacciones Global, Inc., No. 94-cv-4789 (RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995) ("It is well-settled that claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants.").  But on the other hand, because the Court has determined that Plaintiff Nicoletti's claims are not subject to arbitration, and the Uber defendants have not put forth any significant justification for a stay as to his claims, the Court will not stay the proceedings as to plaintiff Nicolleti.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the Uber Defendants' motion to compel arbitration and to dismiss.  Specifically, the motion is granted as to (1) the Uber Defendants' request to compel the arbitration of plaintiffs Umstead's and Fontaine's claims and (2) the Uber Defendants' request to stay plaintiffs Umstead's and Fontaine's proceedings pending the outcome of the arbitration.  The motion is denied as to (1) the Uber Defendants' request to compel the arbitration of plaintiff Nicoletti's claims and (2) the Uber Defendants' request to dismiss the claims against them.

**SO ORDERED** this 13th day of February, 2026.[8]

REGGIE B. WALTON<br>United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.